UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) |
| v. | ) 1:12-cr-00202-JAW |
| | ) |
| CRAIG SANBORN, | ) |
| | ) |
|     Defendant | ) |

**ORDER RE: MOTION TO COMPEL
HANDWRITING EXEMPLARS (ECF NO. 40)**

Craig Sanborn has filed a motion to compel[1] four potential third-party witnesses to produce handwriting exemplars. (ECF No. 40.) Sanborn is charged with one count of wire fraud in violation of 18 U.S.C. § 1343, and the four civilian witnesses are individuals named in four separate invoices or letters submitted by the defendant to the Town of Brownville ostensibly in connection with grant-related expenses. The United States alleges that the documents were known by Sanborn to be false and not to have originated from the businesses of the four witnesses. Sanborn allegedly transmitted the documents by wire in interstate commerce and in return received a payment in the amount of $73,314.00. I now deny the motion.

**Legal Standard**

This Court has the authority to issue an order compelling the production of handwriting exemplars under the All Writs Act, 28 U.S.C. § 1651(a), which provides as follows:

> The Supreme Court and all other courts established by Act of Congress may issue all writs necessary or appropriate in aid of their respective jurisdictions and agreeable to the usages and principles of law.

---

[1] The Government objects to the motion, invoking District of Maine Local Rule 26(b), which requires the consent of a judicial officer before the filing of written discovery motions. Local Rule 26 has never been applied to criminal matters in this District and is intended as the local counterpart to Rule 26 of the Federal Rules of Civil Procedure. It is totally inapplicable to this situation. Discovery in a criminal matter is covered by court order, issued at the time of arraignment on the indictment. (See ECF No. 13.) The parties' duty to confer to attempt to avoid unnecessary discovery-related motions arises under that order, not Local Rule 26, and there is no requirement that a judicial officer give permission prior to either side filing a motion. The parties' apparent unfortunate failure to confer in this instance, contrary to the Government's argument in its memorandum, does not provide a basis for denial or dismissal of the motion.

Courts may rely on the All Writs Act to issue orders necessary for conducting factual inquiries. Harris v. Nelson, 394 U.S. 286, 299 (1969). The purpose of the Act is "to supply the courts with the instruments needed to perform their duty." Id. at 300. The decision to issue an order under the Act is discretionary: "It must be emphasized that the Act . . . is entirely permissive in nature; it in no way mandates a particular result or the entry of a particular order." Application of United States in Order Authorizing use of Pen Register, 538 F.2d 956, 961 (2d Cir. 1976), rev'd on other grounds sub nom., United States v. New York Tel. Co., 434 U.S. 159 (1977). In addition, "[t]he power conferred by the Act extends, under appropriate circumstances, to persons who though not . . . engaged in wrongdoing are in a position to frustrate the implementation of a court order or the proper administration of justice, and encompasses even those who have not taken any affirmative action to hinder justice." In re Grand Jury Proceedings of United States, 626 F.2d 1051, 1059 (1st Cir.1980) (quoting New York Tel. Co., 434 U.S. at 174). The All Writs Act is a recognized mechanism for the collection of handwriting exemplars. United States v. Li, 55 F.3d 325, 329 (7th Cir. 1995); United States v. Kenney, 550 F. Supp. 2d 118, 121 (D. Me. 2008) (citing Li as an exemplar of how to use the All Writs Act).

Few cases have discussed the use of the All Writs Act by a criminal defendant to compel a potential witness to produce a handwriting exemplar. In United States v. Jackman, the District of Kansas granted a defendant's motion to compel a potential witness to produce a handwriting exemplar on the theory that it would "enable the defendant to prepare his defense in advance of trial and to better evaluate the evidence the government intends to offer against him at trial." 1997 WL 161948, at *2, 1997 U.S. Dist. LEXIS 4525, at *6 (D. Kan. 1997). At a minimum, before granting Sanborn's motion, this Court should find that the compelled handwriting exemplars are necessary to insure the "proper administration of justice." In re Grand Jury Proceedings of United States, 626 F.2d at 1059.

**Discussion**

The Superseding Indictment (ECF No. 22) alleges that Sanborn sought reimbursement through governmental grant funding of certain business expenses he had not actually incurred. It alleges that he did this by submitting bogus invoices to the Town of Brownville, claiming that he had paid them in accordance with the terms of the grant when he had not. The allegedly false invoices that are the subjects of Sanborn's motion include the following four exhibits attached to the Government's responsive memorandum:

• Exhibit 1, purportedly from Magkor Industries, a Florida company operated by Giovanni Brus;

• Exhibit 2, purportedly a letter from Rod Garrett, president of ACR international, a business in Vermont;

• Exhibits 3(a) through 3(c), purportedly invoices from Pyro Design Co., a name similar to Pyro Display, a Florida company operated by Greg Dixon;

• Exhibit 4, purportedly from D & S Salvage & Trucking, a name similar to D & S Auto, a garage operated by David Potter in northern New Hampshire.

Brus, Dixon, Garrett, and Potter are all expected to testify that while they engaged in business dealings with Sanborn, these invoices are fake; they were not issued by the respective companies and do not reflect payments Sanborn ever actually made to them. Sanborn apparently hopes the four handwriting exemplars would demonstrate that the witnesses are lying because the invoices contain their handwriting and therefore must be legitimate.

With respect to Exhibit 1 (ECF No. 41-1), the Government points out that the invoice from Magkor Industries does not contain any handwriting by Brus, and thus the request would serve no purpose. (Gov't Response at 3-4, ECF No. 41.) Sanborn does not refute this assertion in a reply. The motion to obtain a handwriting exemplar from Brus is denied.

Exhibit 2 from ACR International, Inc. (ECF No. 41-2), contains the signature of Rod Garrett. Garrett has testified that the signature appears to be genuine. He denies, however, that he ever prepared the invoice and speculates that Sanborn must have cut and pasted his signature and

3

letterhead on a bogus document. (Gov't Response at 4.) Once more Sanborn has failed to refute the Government's representation. A handwriting exemplar from Garrett would do nothing to further the proper management of this case and the motion is denied as to Garrett.

According to the unrefuted representations of the Government (id. at 4-5), the only handwriting[2] on Exhibits 3(a)-(c) (ECF Nos. 41-3, 41-4, 41-5) consists of tiny numerals written in a date box created by a "PAID" stamp. In a report already provided to Sanborn, Dixon denied any knowledge of these invoices, saying the company name was wrong, the format was wrong, and that he never received this money from Sanborn. The Government concedes that evidence that Dixon wrote the numbers in the "PAID" boxes would tend to rebut Dixon's assertion. However, Sanborn has made no showing that his handwriting expert would be able to make a definitive link to a particular writer using only numerals. Absent such a showing, a handwriting exemplar from Dixon would do little to help determine the authenticity of these invoices. When confronted with this logic in the Government's response, Sanborn took no steps to assure the Court that his expert was ready and able to make a handwriting determination based solely on numerals. The motion is denied as to Dixon.

Finally, the invoice in Exhibit 4 (ECF No. 41-6) contains three different annotations: handwriting that reads "Paid in Full," a "Dave Potter" signature, and what appears to be Sanborn's own signature, followed by the date "4/24/06." According to the Government, David Potter denies any knowledge of this invoice, saying the company name is wrong, the invoice format is wrong, neither the handwriting nor the signature are his, he never signs using the name "Dave," and, although he delivered a piece of equipment from Manchester, New Hampshire, to Brownsville, Maine, at Sanborn's request, he received only a fraction of the fee indicated on the invoice. (Gov't Response at 5.)

---

[2] The Government notes that on both Exhibit 1 and Exhibits 3 (a-c) a Brownville town clerk made additional notations in her own handwriting. These extraneous notations have nothing to do with the issues presented by this motion.

Evidence that the handwriting on the D & S Salvage & Trucking invoice was Potter's would impeach his testimony. However, again it is unrebutted that Sanborn already has examples of Potter's actual signature, because the two transact business together. The Government contends that Sanborn's bank records, copies of which were disclosed in discovery on January 7, 2013, contain photocopies of actual checks Sanborn wrote to D & S Auto (the actual name of David Potter's business). At least one of those, an $80 check dated January 23, 2006, bears Potter's endorsement on the back. (Id.) If Sanborn's handwriting expert needs further exemplars from Potter in order to make a comparison, Sanborn has made no showing as to the necessity of those additional exemplars.

My conclusion is that Sanborn has not made the necessary showing that would authorize me to compel any of these potential witnesses to provide handwriting exemplars. While exemplars from Dixon and Potter might aid in making factual determinations, Sanborn has not actually made the case that those exemplars would be useful or necessary for a handwriting expert. In the absence of such a showing, the motion is denied as to all four potential witnesses.

## CERTIFICATE

Any objections to this report shall be filed in accordance with Federal Rule of Criminal Procedure 59.

*So Ordered.*
October 9, 2013                    /s/ Margaret J. Kravchuk
                                   U.S. Magistrate Judge